### 30477. INTERSTATE LIFE & ACCIDENT COMPANY *v.* JACKSON.

DECIDED MAY 6, 1944.

*Langdale, Smith & Tillman,* for plaintiff in error.
*C. J. Taylor,* contra.

SUTTON, P. J.   Irene Jackson sued the Interstate Life & Accident Company on a life-insurance policy issued by the company on the life of Lorenzo Jackson, in which the plaintiff was named beneficiary.   The petition alleged that the insured died on March 22, 1943; that all premiums which had become due on said policy had been paid; that all conditions of the policy relative to proofs of loss, surrender of the policy, and evidence of premium payments, and the filing of a claim with the company, had been duly complied with; and that the company had failed and refused to pay her claim.

The defendant answered, admitting the policy was issued; that the plaintiff was the beneficiary named therein; that all premiums had been paid; and denied liability to the plaintiff, alleging that the policy had, in legal effect, been surrendered by the insured prior to his death for the cash surrender value of the policy, and that the liability of the company on the policy had been changed

from one to pay the beneficiary the face amount on the death of the insured into a present liability to pay the insured the cash surrender value of the policy.

The evidence on the trial was substantially as follows: On April 21, 1930, the defendant issued a policy of insurance on the life of Lorenzo Jackson, wherein the plaintiff was named beneficiary; the policy was an endowment policy under which the company, in consideration of the weekly premiums, agreed, subject to the conditions and provisions of the policy, to pay the insured the sum of $413 after the insured attained the age of 75 years. In the event of the death of the insured before reaching that age, the company would, subject to the provisions of the policy, pay the sum of $413 to the named beneficiary, or to a person entitled thereto under the provisions of the policy. The policy contained the following pertinent provisions: "Cash surrender value. After this policy has been in force ten (10) years, upon written application made to the home office of the company (not more than thirteen weeks after any premium shall be due and unpaid) accompanied by the surrender of this policy and all receipt books, the company will pay a cash surrender value for this policy an amount to be determined by the tables herein. . . Whenever in this policy the words 'the insured' are used reference is made to the person upon whose life the policy is issued. . . This policy constitutes the entire agreement between the company and the insured and is issued and accepted subject to the conditions set forth on this and the reverse side hereof, each and all of which are hereby made a part of this contract." After the issuance and delivery of the policy, the insured and the beneficiary separated, and the insured gave the policy to the beneficiary and told her she would have to pay the premiums if she wanted to keep the policy. She kept the policy and paid the premiums thereon, except the first year's premiums, which were paid by the insured. On February 23, 1943, the insured's attorney wrote the defendant with respect to the policy and requested a photostatic copy of the signatures on the application for the policy. On February 25, the defendant sent the attorney a photostatic copy of the application, and advised the attorney that the insured might change the beneficiary by filing such a request with the defendant and having the policy endorsed. On March 1, the attorney wrote the defendant that the plaintiff had the policy and refused to sur-

render it to the insured, and requested that a duplicate policy be issued, and asked to be informed the amount of the cash surrender value of the policy. The defendant, on March 4, advised the attorney that it could not issue a duplicate policy, as the original was in existence, and that the policy had a cash surrender value of $79.71; but that if the premiums had been paid by the beneficiary, undoubtedly the beneficiary would have some rights in the settlement, and that in order to get the company in the clear and get it a valid release, it might be necessary for the insured to file suit against the company for the cash value and allow it to pay the cash value into court. An application blank for the cash surrender value was enclosed with this letter. On March 6, the president of the company wrote the insured's attorney that the company would be glad to pay the cash value, provided it could secure the policy and receipt book and a valid release receipt, and suggested that the attorney attempt to get the insured and the beneficiary to agree on a settlement whereby they would each receive a part of the proceeds. On March 9, the insured forwarded the application for the cash surrender value to the defendant and filed suit in a justice's court against the company and the beneficiary seeking to recover a judgment against the defendant for $79.71, the cash surrender value of the policy. Summonses were issued on this suit and the defendants served. A copy of the suit was sent to the home office by the local agent, and on March 19, a check was issued by the home office payable to the justice of the peace and sent to the company's local agent. Before answer had been filed to the pending suit in the justice's court, and while the check was still in the possession of the company, the insured died. After the death of the insured, the company filed its answer in the justice's court and admitted being indebted in the sum of $79.71 for the cash surrender value, and alleged that it had issued a check for this amount payable to the justice of the peace, and that this check was in the possession of its agent with instruction to deliver it, at the time the insured died. The plaintiff was appointed temporary administratrix on the estate of the insured, and on June 12, she dismissed the action in the justice's court, over objections of the defendant's attorney, who was present in court. All premiums due on the policy were paid by the plaintiff up to the death of the insured.

The trial court directed a verdict for the plaintiff for the face amount of the policy, and interest thereon. The defendant's motion for a new trial was overruled, and the exception here is to the judgment overruling the motion for a new trial.

■ Under the provisions of the contract of insurance in this case, the defendant company, after the policy had been in force for ten years, upon written application being made to the home office accompanied by the surrender of the policy and receipt books, would pay a specified sum as the cash surrender value of the policy. The contract of insurance is silent as to who should or could make this application, the only requirement being that it be made in writing and accompanied by the policy and receipt books. Here the insured, without the policy or receipt books, offered to accept the cash surrender value of the policy for any interest he had under it, and this offer was declined by the company. After the company declined his offer because he could not produce and surrender the policy which was held by the plaintiff, the insured filed suit against the company to compel it to pay him the cash surrender value, and the plaintiff in this action was made a party defendant to that suit. While that suit was pending, and before either of the defendants had answered, the insured died; and after a temporary administratrix was made a party to the action, she dismissed the same. Where the insured has the right under a policy of insurance of electing to take one or more privileges and dies before the time for making such election has expired, the right of election survives to his legal representatives. *Veal* v. *Security Mutual Life Ins. Co.,* 6 *Ga. App.* 721 (65 S. E. 714) ; *McEachern* v. *New York Life Ins. Co.,* 15 *Ga. App.* 222 (82 S. E. 820). But where the insured elects to take one of the privileges provided for in the contract of insurance, he may revoke his election before it is received and accepted by the insurance company. Fidelity Mutual Life Ins. Co., v. Merchants' & Mechanics' Bank, 71 Fed. 2d, 777 (7). At the time of the death of the insured, the defendant company had not accepted the offer of the insured to take the cash surrender value of the policy for his interest therein, but had expressly declined the offer because the insured could not surrender the policy to the company along with his application. The company had negotiated with the insured relative to how he might secure a release for the company which would be valid and binding, but no contract

had been entered into between the insured and the company at the time of his death, and his death terminated all negotiations between them since their negotiations had not terminated into a perfect contract. See Fidelity Mutual Life Ins. Co. *v.* Merchants' & Mechanics' Bank, supra. When the insured died, the policy was in force, and under the terms of the policy the plaintiff was entitled to recover the sums sued for. There was no material conflict in the evidence, and under the evidence, a finding in favor of the plaintiff was demanded as a matter of law.

■ There is another reason why the judgment in favor of the plaintiff was demanded as a matter of law, under the pleading and evidence of this case. The plaintiff was designated as beneficiary in the policy at the time it was issued, and no provision was made therein for a change of beneficiary. Under the terms and provisions of the contract of insurance in question, the plaintiff, as beneficiary, had a vested right in the contract which could not be diminished or affected by subsequent agreements between the insured and the defendant to which she was not a party and which were not provided for in the contract of insurance. "The beneficiary of an insurance policy has a vested right in the contract of insurance which can not be diminished or affected by subsequent agreements between the insurer and the insured which are not stipulated or provided for in the original contract. The vested right of the beneficiary is subject to be divested only in accordance with express provisions of the contract permitting a change of the beneficiary." *Arnold* v. *Empire Mutual &c. Co.,* 3 *Ga. App.* 685 (60 S. E. 470). Also see, *Smith* v. *Head,* 75 *Ga.* 755; *Perry* v. *Tweedy,* 128 *Ga.* 402 (57 S. E. 782, 119 Am. St. Rep. 393, 11 Ann. Cas. 46); *Farmers State Bank* v. *Kelley,* 155 *Ga.* 733 (118 S. E. 197); *Merchants Bank* v. *Garrard,* 158 *Ga.* 867 (124 S. E. 715, 38 A. L. R. 102). It was said by the Supreme Court in *Roberts* v. *Northwestern Nat. Insurance Co.,* 143 *Ga.* 780, 783 (85 S. E. 1043): "We are therefore of the opinion that the interest of one named as beneficiary in an ordinary life-insurance policy is a vested interest, and the contract of insurance can not be terminated by the insured and insurer without the consent of the beneficiary, except in the manner provided by the policy. The policy did not provide for its surrender and cancellation by agreement between the insured and insurer; and the plaintiff is entitled

to recover thereon under the stipulated facts." Under the terms of the contract of insurance in this case, the right of the plaintiff, as beneficiary, could be divested only by payment to the insured of the sum of $413 after he had reached the age of 75 years, or by a surrender of the policy and receipt books with a written application to the home office for the cash surrender value of the policy. Under the facts of the present case, it appears that neither was done. The insured died before he arrived at the age of 75 years, and no application was ever made to the home office for the cash surrender value of the policy, accompanied by the policy and receipt books. The plaintiff paid the premiums on the policy and had the policy and receipt books in her possession at the time of the death of the insured, and she had them in her possession until she surrendered them to the company as a part of her claim for the face amount due thereon. The policy having been in force at the death of the insured, and the right of the plaintiff as beneficiary to recover thereon not having been divested, the evidence demanded a verdict in favor of the plaintiff against the defendant. There being no conflict in the evidence, and the evidence, with all reasonable deductions and inferences to be drawn therefrom demanding a verdict in favor of the plaintiff, the court did not err in directing such verdict.

It follows that the court did not err in overruling the motion for a new trial. *Judgment affirmed. Parker, J., concurs.*

FELTON, J., concurring specially. I concur in the ruling in division 1 of the opinion, and in the judgment. I dissent from the ruling in division 2 of the opinion for the reason that under the terms of the policy the beneficiary had only a contingent interest in the policy, namely, the right to the face value in the event the insured died before he reached the age of 75. I think that under a proper interpretation of the policy the insured had an absolute right to turn the policy in and receive its cash value after the expiration of the time fixed by the policy.