22006.  OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA v. TEMPLETON, Executrix, et al.

CANDLER, Justice.  On February 15, 1954, Occidental Life Insurance Company of California issued to Dr. Clinton Monroe Templeton a policy on his life for $5,000.  About ten months later he assigned the policy to Mrs. Lurline Templeton, his wife, and gave the insurer written notice thereof.  On February 15, 1960, the policy had a cash surrender value of $458.75 and Dr. Templeton, as the insured, and Mrs. Templeton, his wife, as assignee of the policy, jointly applied for its cash surrender value on a form furnished them by the insurer which each of them signed in the presence of the number of witnesses required by the insurer.  Their application, together with the policy, was mailed to the home office of the insurer in Los Angeles on February 16, 1960, and was received by it on February 22, 1960.  The insurer issued and mailed to Dr. Templeton and Mrs. Templeton a check payable to both

of them for the full cash surrender value of the policy on February 29, 1960, but Dr. Templeton had suddenly died in his sleep two days prior thereto. The check was returned to the insurer. Later and on March 22, 1960, the insurer issued and forwarded to Mrs. Templeton, as assignee of the policy, a check for its full surrender value. She also returned this check to the insurer and made a demand on it for full payment of the policy. Her demand for payment of the policy was refused. On June 28, 1960, Mrs. Templeton as executrix of the estate of Dr. Templeton and individually as assignee of the policy, filed a suit in the Superior Court in Richmond County against the insurer for the full amount of the policy, namely, $5,000; and also for $1,250 (25% of $5,000) as penalty for the company's alleged bad faith in failing to pay the face amount of the policy after demand therefor and $3,750 as counsel fees. By its answer, the defendant denied that the policy was of force and effect at the time of Dr. Templeton's death and averred that its only liability was for payment of the cash surrender value of the policy since Dr. Templeton and Mrs. Templeton, his wife, had exercised the option which the policy contained to surrender it and demand payment of its cash value. A photostat copy of the application for payment of the cash surrender value of the policy is attached to the defendant's answer as an exhibit and it recites: "It is agreed that the entire liability of the company under said policy, except for said net cash value, is hereby discharged and terminated." On the trial, and after the introduction of evidence had closed, the defendant moved for a directed verdict in its favor. Its motion was denied and the jury found in favor of the plaintiff, awarding by its verdict $5,000 "with no interest or penalty" and $1,000 as attorney fees. The defendant timely moved for a judgment in its favor notwithstanding the verdict. It also moved for a new trial. Both motions were overruled. The movant excepted and sued out a writ of error to the Court of Appeals, assigning error on both judgments. That court held, 107 Ga. App. 322 (130 SE2d 168) that the verdict for $1,000 as attorney fees could not be sustained since the jury had found that there was no bad faith on the company's part in refusing to pay the face amount of the policy on demand therefor. It also held: "Assuming, as contended by the defendant that the plaintiff and the insured had executed an application

to surrender the policy for its cash value, and had forwarded the same to the defendant before the death of the insured, under the express provisions of the policy (as plead by the defendant), the insurance company had an option of accepting the application to surrender the policy immediately or to defer payment of such cash surrender value for a period of up to six months. The undisputed evidence, including evidence which the insurer contends should have been admitted over the plaintiff's objections, shows that the option given the insurer was not exercised until after the death of the insured. While it is true that the insurer, under the terms of the policy (as shown by the pleading) was required to pay the cash surrender value six months after the application was received at its home office, yet until the application was accepted and the cash surrender value paid the policy was still in force and effect, and where the insured died two days before the insurer mailed its acceptance of the application to surrender the policy, the policy was still in effect at the time of the death of the insured, and the verdict for the face amount of the policy was demanded by the evidence, there being no evidence of any acceptance by the insurer prior to the insured's death. Accordingly, the trial court did not err in overruling the defendant's motion for judgment non obstante veredicto or the general grounds of its motion for new trial. *Interstate Life &c. Co. v. Jackson,* 71 Ga. App. 85 (30 SE2d 208). This case differs from *DeLaPerriere v. American Home Assurance Co.,* 106 Ga. App. 516 (127 SE2d 478), in that there the insured had the sole option to cancel the policies whereas here the insurer was given an option as to when it would accept the cancellation after the insured exercised his option." The defendant applied to this court for the writ of certiorari and in its application therefor assigned error on the last mentioned and quoted ruling of the Court of Appeals. The writ was granted to review that ruling.
*Held:*

The insurance contract here involved vests in the holder thereof an absolute right to surrender it to the insurer and take its cash value in lieu of the insurance benefit therein provided for and it contains a formula for determining such value on its surrender date. It does not give the insurer any right to refuse payment of its cash surrender value when proper application is made for it but it does give the insurer a period of not more

than six months from the date such an application is received in which to pay it. It is not contended that Dr. Templeton, as the insured, and Mrs. Templeton, as assignee of the policy, did not make a proper application for the cash surrender value of the policy, namely, $458.75. The controversy arises from the death of Dr. Templeton which occurred after the insurer received the application for payment of the cash surrender value of the policy and actual payment of it by the insurer. In 45 CJS 123, § 460 b, it is said: "Insured's contractual privilege to exercise an option to take the cash surrender value of his insurance policy is one which he has bought and paid for and is irrevocable by the insurance company as long as the policy remains in force. The rights of the parties become fixed immediately on insured's exercise of such option, and, where insured demands the cash surrender value of his policy and at the same time surrenders it to the insurance company, he is then deemed to complete the exercise of his option by accepting the open offer of insurer, as contained in the policy, to pay the cash surrender value on due demand; at that point the obligation of the insurer to pay the cash surrender value becomes a fixed and perfected obligation or matured debt with all other obligations merged into it, and the fact that actual payment of the money may be postponed until after the death of insured does not abrogate the completed surrender or reinstate the policy so as to permit recovery of the insurance but the company's liability is limited to payment of the surrender value. It has been held that, where insured exercises his election, in proper form and in the manner provided in the policy, to accept the cash value of the policy, and sends his acceptance to the company by mail, the contract is completed when his acceptance is mailed, and his death before the letter is received by the company does not revoke it." And in 29 Am. Jur. 916, § 631, the author says: "The execution of a surrender agreement by an insured having the option to withdraw the accumulated net reserve in cash is not a mere offer which does not become effective unless the surrender value is paid within a reasonable time or before the death of the insured, but is an acceptance of the option or offer contained in the policy which makes the obligation of the insurer to pay absolute. Consequently, in such case, where the surrender value is not paid before the death of the insured, the estate, and not the beneficiary, becomes entitled to that

sum, and the beneficiary may not rescind the insured's surrender of the policy because of the nonpayment of the cash surrender value prior to the death of the insured. The death of the insured between the mailing of his acceptance of an absolute option to take the cash value of a tontine policy upon the maturity of the tontine period, and the receipt of such notice by the company, does not nullify the acceptance, and the rights of the parties must be adjusted in accordance therewith, as against the refusal of the beneficiary to accept the settlement, the theory being that the contract is completed upon the mailing of the notice of election, so that the beneficiary cannot recover on the original contract." The above quoted statements are clearly supported and fully sustained by many Federal and state appellate court decisions and we think they announce and state a correct principle of contract law. Among those cases so holding is Fidelity Mutual Life Ins. Co. v. Merchants & Mechanics Bank, 71 F2d 777, a case which was filed in a Georgia State court and removed to the Federal court for trial and where the court applied Georgia law to a like insurance contract. It is a well-settled rule of law that when, as here, the insured is given the right or option under a life insurance policy to surrender the policy and accept its cash surrender value, such right or option constitutes and is a continuing offer on the part of the insurance company, which the insured has bought and paid for and, when that right or option is accepted by the insured, it fixes the rights of the parties without further action on the part of the insurer. When, as in this case, the right or option to accept the cash surrender value of a life insurance policy is exercised by a proper application for such value, the relationship between the insurer and the insured is thereafter that of debtor and creditor only and the extent of the insurer's liability is payment of the cash surrender value of the policy. In this case the right or option to accept the cash surrender value of the policy was exercised both by Dr. Templeton, as the insured, and by Mrs. Templeton as assignee of the policy, and the fact that Dr. Templeton died before the cash value of the policy was actually paid did not alter in any way the rights of the parties. Hence the Court of Appeals erred in holding that the trial judge correctly denied the defendant's motion for judgment notwithstanding the verdict. It is not

necessary for this court to deal with the exception respecting the denial of the defendant's motion for a new trial.

*Judgment reversed. All the Justices concur, except Duckworth, C. J., and Head, P. J., who dissent.*

ARGUED MAY 13, 1963—DECIDED MAY 29, 1963.

*Fulcher, Fulcher, Hagler & Harper*, for plaintiff in error.
*Randall Evans, Jr., Jeff D. Curry*, contra.