CHATHAM *v.*

OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA

No. 42828 December 16, 1963 158 So. 2d 735

*Brunini, Everett, Grantham & Quin,* Jackson, for appellant.

*Lipscomb & Barksdale,* Jackson, for appellee.

RODGERS, J.

This case is an appeal from a judgment in favor of appellee, Occidental Life Insurance Company, (hereinafter called Insurance Company) rendered in the Circuit Court of the First District of Hinds County, Mississippi, on motion of the appellee for a directed verdict at the close of the case. The case involves the liability of appellee upon an insurance policy issued on the life of Griffin B. Chatham, which lapsed for failure to pay the premium, and was either canceled by appellee or abandoned by Griffin B. Chatham.

It appears from the record on appeal that the Insurance Company issued a term life insurance policy through its agent, Elmer Soloman, insuring the life of Griffin B. Chatham, on August 27, 1957. The policy was made payable to appellant, beneficiary, in the initial sum of $20,000. The premiums were payable in monthly installments of $6.72, beginning on the above-mentioned date, and due on the 27th of each month thereafter.

. The policy contained the provision commonly referred to as a "grace period" which provided: "A grace period of 31 days shall be allowed for payment, without interest, of each premium after the first. This policy shall continue in full force during the grace period. If the Insured dies during the grace period, the unpaid premium shall be deducted from the proceeds payable under this policy."

The insurance policy also contained an agreement whereby the policy could be reinstated after it had lapsed for non-payment of premiums, which provided: "This policy may be reinstated at any time during the term period and within five years after the date to which premiums were paid. Reinstatement shall be subject to evidence of insurability of the Insured satisfactory to the Company. Reinstatement shall also require payment of all overdue premiums and payment of interest on such premiums at 5% compounded annually."

It is admitted that the policy lapsed for nonpayment of premiums on August 27, 1958. Thereafter, on October 18, 1958, the insured, Griffin Chatham, forwarded to the Insurance Company the sum of $13.44. This sum was equivalent to two monthly premiums. The Insurance Company acknowledged the receipt of the premiums by letter, dated October 29, 1958. The Company advised the insured however that his policy had lapsed for non-payment of premiums on August 27, 1958. The Insurance Company suggested that, in order to reinstate the policy, a premium of $6.36 should be paid, and that a reinstatement application completed in detail would be required. This letter also advised the insured that upon receipt of the $6.36, premium on the policy, would be paid to November 27, 1958, "if reinstatement is approved." Later, on November 12, 1958, the Insurance Company requested the completed reinstatement application and check for $6.36 "* * * in order that your insurance may again be placed in effect." The insured

forwarded to the Insurance Company a check for $6.36, dated November 12, 1958, and the completed reinstatement application form, properly filled out, requested by the company. The check was cashed by appellee on November 19, 1958, and on November 21, 1958, the Insurance Company acknowledged receipt of the "completed reinstatement application" and the remittance of $6.36, but advised insured that "the money we have on deposit will only cover unpaid premiums to November 27th, therefore we require another monthly premium." The Insurance Company then requested a payment of $6.72, and stated: "If the above is received and reinstatement approved, premiums will then be paid to December 27, 1958." Thereafter, on December 4, 1958, the insured mailed to the Insurance Company $6.72 as requested by the last above-mentioned letter. In December 1958, the Insurance Company wrote insured: "Reinstatement of your policy is now pending our Underwriting Department's approval and we hope to be able to complete this transaction within the next few days." On December 8, 1958, the Insurance Company wrote another letter stating that it had not received the $6.72 which it had previously requested. This letter was not answered since the premiums requested had been previously mailed.

On January 5, 1959, appellee Insurance Company, without requesting further proof of insurability, "forwarded its check to the Insured in the amount of $26.25 as a 'refund'" of all the premiums that insured Chatham had mailed to it since the policy lapsed. The refund check had written on the reverse side: "The amount stated on the face of this check is in payment of full refund on deposit a/c reinstatement requirements not received on Policy # 3614334 on the life of Griffin Chatham." In the meantime the insured had obtained a second physical examination by a medical doctor, in an effort to reinstate his policy. This medical report, however, was never mailed to the Insurance Company.

The last part of January 1959, Elmer Soloman, an Agent of appellee Insurance Company, brought a new reinstatement application to the home of the Insured Chatham and filled it out for him. This application was never signed, because, it is said by appellant, Mr. Soloman suggested to insured that he take out a new policy, identical to the first policy in all respects, with the same coverage, at a reduced premium rate. It is claimed that the insured "relying on the advice of the agent and representative of the Company and believing he was obtaining the same coverage, Chatham took out the second policy which was dated February 21, 1959." Both policies contained the following provision: "* * * If the Insured dies by suicide, while sane or insane, within two years from the date of issue of this policy, the liability of the Company shall be limited to the amount of the premiums paid."

Insured committed suicide on January 15, 1960. This was two years and five months after the issuance of the first policy of August 27, 1957, but less than two years after the date of the second policy.

Appellant contends that the circuit court erroneously sustained appellee's motion for a directed verdict for two reasons: (1) The insured complied with all of the requirements necessary to reinstate the first policy and as a matter of law the policy was automatically reinstated in November 1954; (2) after reinstatement the Insurance Company wrongfully attempted to terminate the insurance contract, returning his premiums, thereby releasing the insured from further obligations to tender the premiums after they became due. The Insurance Company, on the other hand, claims the policy lapsed for failure to pay premiums, and that the policy was never reinstated because the insured never furnished proof of insurability satisfactory to the Company. The Insurance Company also claims that, had the policy been

reinstated it was abandoned by insured when he accepted and cashed the check for the return of premiums advanced by him to reinstate his policy after purchasing the second policy.

Both parties to the action agree that the premium due August 27, 1958, was not paid, but that since the premium could have been paid within thirty-one days, it finally lapsed for failure to pay the premium by September 27, 1958. It appears from the insurance contract that the insurance could have been reinstated "at any time during the term period and within five years after the date to which premiums were paid. Reinstatement shall be subject to evidence of insurability of the Insured satisfactory to the Company."

The insured mailed the Company $13.44, which was sufficient to have paid the premiums for August and September 1958, and until October 27, 1958, had the policy been in force. The Company demanded another monthly premium on October 29th in the sum of $6.36. This sum was paid so that the policy would have continued to be paid up to November 27, 1958, had it been in force, and on November 21, 1958, the Company required an additional sum of $6.72 to pay the premium on December 27, 1958. Thus, it is seen that all the premiums due on the policy were paid up to December 27, 1958.

It becomes apparent, therefore, that if the policy were automatically reinstated at the time the insured complied with the request of the Company by forwarding the money required and the evidence of insurability (to wit: not later than November 19, 1958) the policy would have been in force and effect for the grace period of thirty-one days after December 27, 1958. See 29 Am. Jur., Insurance, § 391, p. 743.

▇▇ ▇ After a careful examination of the record in this case, we are of the opinion that it is not necessary to determine at this time whether or not, under the facts

here presented, the insurance contract was automatically reinstated when the insured paid all of the premiums due and furnished the Insurance Company evidence of insurability, and did all that was required of the insured at the time, because we are of the opinion the insured, Griffin B. Chatham, abandoned the first insurance policy, and acquiesced in its cancellation.

The record shows that the insured, at the suggestion of an agent of the Insurance Company, obtained a physical examination and had the agent to fill out a new reinstatement application on the first policy, but this application was not signed because another agent of the Company advised the insured that he could obtain a similar policy at a lower premium. He stated he "could make it more convenient than this monthly payment, that it could be paid quarterly", and he suggested, "to end all of the confusion, that resulted from the first policy and for convenience sake, that Griffin B. Chatham take the second policy." A second policy was therefore issued under date of February 21, 1959. The application for the new policy contained the statement under a question as to other life insurance policy now in force that "Metropolitan, amount $5,000, Term, November 1, 1957." This application was signed February 21, 1959, and was the application for the new policy. Thus, it is apparent the insured did not then claim that the first policy issued by insurer was in force and effect at the time. Moreover, thereafter, on March 5, 1959, insured cashed the check mailed to him by the Insurance Company for the premiums previously paid by him on the first policy. He endorsed the check under the typewritten conditions printed thereon: "The amount stated on the face of this check is in payment of" and typewritten thereon: "full refund of deposit a/c reinstatement requirements not received on policy #3614334 on the life of Griffin Chatham."

 The rule that premiums need not be tendered an insurance company on a policy of insurance wrongfully canceled, or where the insurance company has wrongfully refused to accept premiums, is not only based upon the assumption that the insured need not do a vain thing by continuing his tender of premiums, but it presupposes that the insured is ready and able at all times to pay the premiums and would do so except for the fact that the insurance company would not accept payment, if tendered. Therefore, when the testimony reveals that the insured no longer intends to pay premiums on a policy of insurance and acquiesces in the cancellation of the policy, although the cancellation was wrongfully made, the insured is bound by his acts.

In the case of Daggett v. Prudential Life Insurance Company, 175 Miss. 89, 166 So. 405, this Court said:

"When the life insurance policy was canceled, the payment of $3.12 by the insured to the insurer prior to the cancellation would have prevented it. The insured made no protest, did not offer to pay any sum at any time thereafter, nor was any effort made to pay any sum to the date of the filing of this bill. * * *

"With these statements of fact, we are of the opinion that, even if it be conceded that the insurer wrongfully canceled the life insurance policy and had no right to do so, yet when the premium became due again on the anniversary date in 1933, the appellant was not relieved by any act of the insurer from payment of the premium on the policy. * * *

"In Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 100 So. 812, the above language was set forth, and the court then said that the Norris Case left out of view the case of Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538, as to the duty of the insured to 'keep good' the tender of the first premium, and to show that assured was ready, able, and willing to make payment of subsequent premiums. * * *

"In the case at bar, when the insured was notified by the insurer that her policy had been canceled, it was her duty, when the time came to make payment of another premium, to make protest, or tender payment. She never uttered a word, and everything she did was calculated to lead the insurer to believe that she acquiesced in the cancellation. She never paid a dollar, or offered to pay anything, and the most that could be said is that the payment of the premium on the life insurance policy in January 1932, kept it in force until the anniversary date in January, 1933. She did not pay, and it is not asserted that she was ready, willing, and able to pay. On the contrary, it is fair to assume that while she was living she had borrowed the full face value of the policy, and that by her silence and her absolute non-action in reference thereto, she acquiesced in the cancellation of her policy; and that, at all events, by failure to pay any premium, or tender any sum on the subsequent anniversary date, under the terms of the contract the cancellation of the policy became complete."

In the case of Aetna Life Insurance Company v. Dodd, 103 F. 2d 793, the Court said: "Here there is a claim that the policy had some loan value, though no such claim was asserted by the insured. The company, however, has always contended that the policy had lapsed. The insured fully understood the company's contention. In fact, he acquiesced in that contention when he filed his application for reinstatement. He was, of course, chargeable with knowledge of the provisions in his policy and his rights thereunder. * * * As has been observed, the check by which these premiums were returned to him showed on its face that it was given to cover these proffered premium payments. There is no claim of mistake, overreaching, or fraud in this case. The action is one at law to recover on a

contract which the evidence conclusively shows had by mutual consent been rescinded. * * *

"We can not escape the conclusion, under the undisputed evidence in this case, that there was no basis for recovery in this case because the contract had been rescinded by mutual consent. * * *"

In the case of Missouri State Life Insurance Company v. Hill, 109 Ark. 17, 159 S. W. 31, in which the Court said: "The record shows that he afterwards procured a policy in another company, and this is conclusive proof of the fact that he was not sick at the time the company declared his policy forfeited, and is also proof of the fact that, by signing up the blank application for reinstatement, he might have kept his policy in force. He made no attempt to obtain a judicial interpretation of his contract of his insurance. He did not return to the insurance company his check for the premium note and insist that his policy of insurance was still in force. On the contrary, he kept the check and made no reply to the insurance company. Under the circumstances this amounted to a voluntary agreement between himself and the insurance company to cancel his policy, and the effect was to terminate the contractual relation between himself and the insurance company."

 █ It is a general rule, well-established, that a policy of insurance may be canceled at any time before loss, by agreement between the parties, █ and such cancellation may be by the consent of the parties, expressed or implied from the circumstances, independently of the terms of the policy. 29 Am. Jur., Insurance, § 408, p. 753.

The case of Callender v. Lamar Life Insurance Company, 182 Miss. 609, 182 So. 119, is a good example of a case where the insured repeatedly requested but was refused reinstatement of his policy, after it had been wrongfully canceled . In that case the insured was ready, willing and able at all times prior to his death to pay

the premiums subsequently accruing thereon, and under the facts in that case, the Court held that the beneficiary might sue for the face of the policy.

Although it may be said as a general rule that the wrongful termination of an insurance contract by the insurer excuses further tender of premiums or assessments by the insured, this does not mean that the insured, under all conditions, regardless of the circumstances of the determination, may remain entirely inactive for an indefinite period, accepting the returned premiums, and accepting a new policy in lieu thereof, and later permit the beneficiary to sue on the canceled policy. See Anno. 122 A. L. R. 386.

We have arrived at the conclusion, in the instant case, that the insured agreed to, and acquiesced in, the cancellation of his first policy, by accepting the return premiums thereon and by purchasing a new policy.

We are therefore of the opinion that the trial court was correct in sustaining a motion for a peremptory instruction, and directing a verdict for defendant, Occidental Life Insurance Company. Judgment of the trial court is therefore affirmed.

Affirmed.

*Kyle, Gillespie, McElroy and Jones, JJ.,* concur.