ROBERTSON, Justice:
The appellee here, Mrs. J. V. Coggins, Administratrix of the estate of her minor daughter, Linda K. Coggins, brought suit in the Circuit Court of Jackson County, Mississippi, against James L. Stanford and Gladys F. Stanford for the wrongful death of her daughter arising out of an automobile accident on May 26, 1963. The jury returned a verdict for $30,000 damages. A judgment for that amount in favor of the appellee and against the Stanfords was entered on February 4, 1964.
Appellee filed a Suggestion for Writ of Garnishment against United States Fire Insurance Company of New York claiming that the said insurance company had issued a policy of automobile liability insurance to the said James L. Stanford and that the policy was in full force and effect at the time of the fatal automobile accident.
Appellant, as garnishee-defendant, filed the Answer required by statute denying that it was indebted to the Stanfords. The ap-pellee, Mrs. Coggins, filed a Contest of the Answer to the Writ of Garnishment and set up in her pleading that on August 14, 1962, the United States Fire Insurance Company had issued an automobile liability insurance policy to the Stanfords insuring them against liability for damages sustained by virtue of the operation of their 1957 Buick automobile for the term of one year. The appellee alleged that the policy was in full force and effect on May 26, 1963, the date of the accident, and, that inasmuch as the garnishee had insured the Stanfords against liability for damages, the garnishee thereby became liable for the $30,000 judg *484 ment rendered in favor of the appellee, Mrs. Coggins, Administratrix.
The appellant filed an Answer to the Contest of Answer to the Writ of Garnishment and set up by way of an affirmative defense that the insurance policy had been cancelled on September 19, 1962, when James L. Stanford signed and executed a Lost Policy Cancellation Release. Issue was joined on these pleadings and on a trial of the case by the Circuit Judge sitting as judge and jury, the judge rendered judgment against the garnishee-defendant for $30,000, the amount of the judgment against the Stanfords. Thereupon the garnishee-defendant, appellant here, perfected its appeal to this Court.
The Desporte Insurance Agency of Biloxi, Mississippi, had been writing the automobile liability insurance for Stanford for about ten years. When a one-year policy would expire, Mr. Ernest Desporte would mail or personally deliver to the Stan-fords a renewal policy and when Stanford would purchase another automobile, Des-porte would issue a new policy or endorsement to an existing policy covering the newly purchased automobile. Desporte testified that when he delivered the policy to Mrs. Stanford, he would work out an arrangement for collecting the premium.
Mr. Ernest Desporte summarized his insurance dealings with Mr. Stanford for the two years preceding the issuance of the policy in question, as follows:
“The two policies preceding that, the two policies the two years preceding that was with the Voluntary Writing through the Aetna Casualty Surety Company. Due to circumstances the company declined to accept renewal. Then I had to get an application under an assigned risk. Mr. Stanford took it for one year and then at the end of that year, I told him prior to the end of that year I told him what the premium would be for the renewal, which was higher than the previous year. He said he couldn’t handle it that way. I said with a year with the no losses in the last year, I might be able to try one in my direct company. I wrote that policy with the United States Fire Insurance Company. They immediately notified me to release the company, pick up the policy or sign a lost policy release, and at that date I executed the lost policy release as is shown on the exhibit.”
Desporte further testified that he went to the home of the Stanfords on September 19, 1962, about 10:00 A.M., and the following took place:
“At his home on East Howard Avenue. I told him — I said, ‘James, where’s the policy to be released?’ and I said, ‘Oh, you’re sleeping. Wait a minute, I want to talk to you and I want to be sure you’re wide awake before we do anything. And we shoot the bull, you might say for a few minutes, to be sure he was wide awake and I’d say that few minutes run to about fifteen minutes before I actually went into anything of a business transaction with him to make sure he was well awake, and then I saw that he was well aware of what was going on and then I proceeded with getting to ask him to sign the release because the company requested cancellation immediately. I said, ‘Where is the policy?’ He said his wife was in Louisiana with illness in her family. Her family was ill in Louisiana or Texas and he didn’t know where the policy was. I said to just sign this lost policy release — and I called him Jack- — • sign the lost policy release and it will release the company and when you find the policy later on, you can bring it to me and I signed as witness to his signature and got it in the mail that night.
Q. When you found him then, Mr. Stanford had been asleep and you woke him up, did you not ?
A. Yes, sir, he had been on the late hour shift for the Continental Trail-way.
*485 Q. And he was in a sleepy, dazed condition while you were sitting there talking with him?
A. I was talking with him to he sure he came out of that sleepy, dazed condition and he was well aware of the business transaction. He was not in a sleepy, dazed condition when I asked him to sign the form.”
The Lost Policy Cancellation Release provided:

SIGNATURES MUST CORRESPOND WITH NAMES MENTIONED IN POLICY.

*486 ' Stanford, admitted that that was his signature on the Lost Policy Cancellation Release, dated September 19, 1962. He stated that he didn’t remember signing it, but invariably when any insurance business came up between them, that Mr. Desporte would fix up whatever was needed and he, Stanford, would sign it and that he always had the utmost confidence in Mr. Desporte. In answer to his counsel’s question as to whether any explanation was made to him of the nature of the paper he was signing on September 19, 1962, Stanford said that he didn’t remember, and when asked if he knew that he did not have liability insurance, he answered, “No.”
The Stamfords testified that they thought they had continued to make payments on their insurance account. Desporte testified positively that no payments were made after the'- cancellation on September 19, 1962, and that the unearned premium of $64.87 was posted' to the credit of Stanford against the $72.00 premium for the policy of August 14', Í962.
Mrs.-Stanford testified that inasmuch as they couldn’t pay the entire premium all at once, that they would make a cash payment about every two weeks. She stated that they continued to make payments until the date of the accident in May of 1963, that she got receipts for these payments, but didn’t have them with her, and none were produced by either Stanford or his wife.
This is a suit by a judgment creditor against a garnishee-defendant. It is generally conceded that the judgment creditor succeeds to the rights of the judgment debtor in a garnishment proceeding. 6 Am. Jur.2d Attachment and Garnishment § 2 at 561 (1963).
The trial judge in his opinion ruled that the one and only way the insurer and the insured could cancel the insurance contract was by strictly following the plan outlined in the policy. The policy method of cancellation was set forth in Paragraph 16, as follows:
“16. CANCELLATION. This policy may be canceled by the insured named in item 1 of the declarations by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the company by mailing to the insured named in item 1 of the declarations at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender of the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by such insured or by the company shall be equivalent to mailing.
“If such insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation.”
The trial judge held that the insurer had not followed this plan, that the policy was in force and effect at the time of the fatal accident, and that the insurer was liable. In holding that this was the only way the insurance contract could be cancelled, the trial court was in error and ignored the well recognized rule set forth in 29 Am.Jur. Insurance section 408, at 753 (1960), wherein it is said:
“The method of cancellation provided for in an insurance policy is not necessarily exclusive so as to preclude an effective cancellation of the policy by mutual agreement without compliance with *487 the procedure so provided. Thus, it is well established that a policy of insurance may be canceled at any time before loss, by agreement between the parties, and such cancellation may be by the consent of the parties, express or implied from the circtimstances, independently of the terms of the policy.” (Emphasis added.)
The same rule, although stated differently, is found in 45 C.J.S. Insurance § 444(f) (1946), in the following language:
“A valid and effective cancellation of an insurance contract by mutual agreement terminates the relationship of insurer and insured and the rights and liabilities of the parties under the contract that might otherwise accrue, hut it does not relieve from liability already accrued.”
In the case of Chatham v. Occidental Life Insurance Company of California, 248 Miss. 328, 158 So.2d 735 (1963), this Court quoted with approval the general well established rule that a policy of insurance may be cancelled at any time before loss, by agreement between the parties, and that such cancellation may be by consent of the parties, express or implied from the circumstances independently of the terms of the policy.
Now what are the pertinent facts in this case? The garnishee-defendant, the appellant here, introduced into evidence a written Lost Policy Cancellation Release, admittedly signed by James L. Stanford. Stanford and his wife, the judgment debtors, said in effect that Stanford didn’t know what he was doing when he signed the release because he had worked the night before at his regular job with Continental Trailways. Ernest Desporte testified positively that he went out to Stanford’s home, about 10:00 A.M., that he talked to Stanford for fifteen minutes before he asked him to sign the release, and that Stanford fully understood the purport of the instrument he was signing. There was no testimony that Stanford was tricked or that he was not able to comprehend because of physical or mental weakness or illness. There was no testimony that he was not an intelligent competent adult, and that he was not responsible for his actions. The mere fact that Stanford did not remember three years later exactly what took place on the occasion of his signing is certainly not sufficient evidence upon which to set aside a solemn written instrument voluntarily and knowingly signed by him.
He is responsible for his acts just like any other intelligent competent adult. He is presumed to have read and understood the instrument to which he affixed his signature.
 It is argued by the judgment creditor, the appellee, that the burden of proof was upon the appellant to prove a cancellation of the policy. This burden of proof was met when the appellant introduced the written Lost Policy Cancellation Release signed by the insured. There was no vague or ambiguous language in this instrument; there was no veiled > meaning, it was about as plain and clear as the English language could express it.
The testimony of Mr. and Mrs. Stanford falls far short of meeting the burden of proof shifted to the appellee of negating and negativing the terms of the solemn written release. The insurance contract between the appellant and James L. Stanford was effectively cancelled by agreement of the parties voluntarily and knowingly done on September 19, 1962, when the Lost Policy Cancellation Release was signed and executed. The Stanfords had no automobile liability insurance in effect when the fatal accident happened on May 26, 1963, over eight months after the policy had been cancelled. It follows, therefore, that the judgment of the trial court must be reversed, and judgment rendered here for the appellant.
Reversed and -judgment here 'for appellant.
ETHRIDGE, C. J., and JONES; BRADY and INZER, JJ., concur.