COLE, Judge.
Union National Life Insurance Company is an insurance company organized under the laws of the State of Louisiana. On October 1, 1970, Union National issued its policy number 70900004 insuring the life of Nelson Etheridge, a resident of the State of Mississippi. The beneficiary named in the policy was Daphine Sterling Etheridge, his wife at the time of issuance. Monthly premiums in the amount of $22.06 were paid up until September 10, 1975.
On October 8, 1975, a cash surrender application was filled out, the policy was surrendered, and a receipt was issued by the company. Subsequently, the surrendered policy was sent to Union National’s home office in Baton Rouge, Louisiana. On October 24, 1975, Union National issued a check in the amount of $600 as payment for the cash surrender value. This check was sent to Union National’s District Manager for delivery to the former policyholder. Prior to delivery of the check, on November 2, 1975, Nelson Etheridge was killed in an automobile accident.
Daphine Sterling Etheridge, the beneficiary named in the policy, brought suit on February 16, 1976, claiming that the policy benefits of $10,000 and the accidental death benefits of an additional $10,000 should be paid to her. She also claimed that, as the company refused to pay its obligations under the policy, she was entitled to statutory penalties.
Union National answered denying liability, claiming cancellation of the policy by its surrender for the cash surrender value. Union National also argued that, should it be liable to pay the $10,000 policy benefits, the accidental death benefits would still not be payable since there had been no payment of the policy premiums which would keep these benefits in force beyond a month following the last payment in September of 1975.
The matter was submitted to the trial court for judgment on a written joint stipulation of facts, exhibits attached to the stipulation, and a memorandum by Union National. Both plaintiff and defendant agree that the law of Mississippi is applicable herein. The trial court ruled in favor of Daphine Sterling Etheridge, holding Union National liable for payment of the full $20,-000 claimed, but the court found no arbitrary action on the part of the insurer and so applied no penalties.
The court agreed with the plaintiff’s claim that the following language of the policy was ambiguous:
“Surrender for Cash. The owner may surrender the policy to the Company and receive the net cash value. The policy will then terminate. The Company may defer paying the cash surrender value for a period not exceeding 6 months from receipt of request.”
The court then reasoned that the meaning of this section of the policy was that the obligations between the parties to the contract varied from that normally the case under the law of Mississippi and that there could be no cancellation of the policy (and so no cancellation of the company’s obliga *947 tion to pay the benefits thereunder) until the insurer had actually paid the full amount of the cash surrender to the policy owner. In making this finding, the court distinguished the language in the policy from the language of the policy in the case of Mutual Life Insurance Company v. Kaiser, 193 Miss. 581, 10 So.2d 766 (1942).
In determining the meaning of a portion of a contract and the obligations created thereby, it is necessary to consider the whole agreement and read together all portions bearing on the question. The above-quoted language is the only section of the policy considered by the court below; in preceding sections the policy also contains the following language: “Termination. This agreement will terminate:

“2. On surrender of this policy for cash
jfc Sft !(S ‡ !{«
“This agreement may be terminated by written request accompanied by the policy for endorsement.”
When all of these sections are considered, the ambiguity claimed by plaintiff could be found only by straining the construction of the policy in order to arrive at the intentions of the parties. This is to be avoided under the common law as under the civil law. Mid-State Homes, Inc. v. Cherokee Insurance Company, 51 Ala.App. 247, 284 So.2d 274 (1973); La.-C.C. art. 1945, et seq.
The general rule of law, in Mississippi as in other common law jurisdictions, must obtain in this case:
“The privilege to exercise the quoted option [to surrender the policy for payment of the cash surrender value] was one which was bought and paid for by the insured, and was at all times irrevocable by the company so long as the policy remained in force. When the insured elected to exercise the option by an unqualified notification to the company to that effect, the obligation of the company became thereupon a matured indebtedness to the insured for the amount of the cash surrender value, and any contingent liability thereby came to an end. The company would have no right or option or privilege to reject the unconditional notification of the exercise by the insured of his right to accept the cash surrender value, and when so notified in unqualified terms the obligation of the company to pay the cash surrender value became then and there a fixed and perfected obligation, — a matured debt with all other obligations merged into it. * * * ” (Mutual Life Insurance Company v. Kaiser, 193 Miss. 581, 10 So.2d at 766, 767)
See, also, Occidental Life Insurance Company of California v. Templeton, 219 Ga. 39, 131 S.E.2d 530 (1963), and Green v. American National Insurance Company, 452 S.W.2d 1 (Tex.Civ.App.1970).
Alternatively, even assuming, but not so holding, that the language of the policy is ambiguous as to the point at which the insurer’s obligation to pay the policy benefits ceases, there was a subsequent agreement entered into between the parties which, under the law of Mississippi and that of other common law jurisdictions, results in cancellation of the company’s obligation no matter what terms for cancellation were agreed upon between the parties in the policy. An agreement subsequent to and independent of the policy could have the effect of altering, modifying, or rescinding any rights the parties would have had under the prior agreement, i. e., the policy. Chatham v. Occidental Life Insurance Company of California, 248 Miss. 328, 158 So.2d 735 (1963); United States Fire Insurance Company v. Coggins, 195 So.2d 482 (Miss. 1967); General Insurance Company of America v. Killen, 120 So.2d 887 (Ala.1960); Allstate Insurance Company v. Doody, 193 So.2d 687 (Fla.App.1967).
In the case now before this Court, the cash surrender application contains the following language:
“I hereby apply for the cash surrender value of the above described policy. In consideration of the payment to be made to me of the cash surrender value I herewith surrender the policy to the company *948 for cancellation of all insurance hereunder, and hereby release and forever discharge the company from all claims under said surrendered policy.”
This document, signed by the insured, modifies the agreement between the parties by obligating the insurer to pay the cash surrender value and by limiting the claim under this later agreement to the right to receive this cash surrender value. The obligation of the insurer to pay the policy benefits and the right of the beneficiary to claim such benefits is cancelled.
For the foregoing reasons, the judgment of the trial court is reversed. The costs of these proceedings are assessed to the appel-lee.
REVERSED AND RENDERED.