Fred FLINT, Mary Flint, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE; Dan Glickman, Secretary of the U.S. Department of Agriculture; Grant Buntrock, Administrator, Federal Consolidated Farm Service Agency; James Mohan, Vermont State Executive Director, Farm Service Agency, Defendants.

No. 96 CV 102.

United States District Court,
D. Vermont.

Sept. 26, 1997.

James Christopher May, South Royalton Legal Clinic, South Royalton, VT, Fred Flint, Randolph, VT, for plaintiffs.

Melissa A.D. Ranaldo, AUSA, Office of the United States Attorney, District of Vermont, Burlington, VT, for defendants.

## ORDER

SESSIONS, District Judge.

The Report and Recommendation of the United States Magistrate Judge was filed September 9, 1997. Plaintiffs Fred A. Flint and Mary A. Flint timely filed their objections to the Report and Recommendation on September 23, 1997.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1); *Perez–Rubio v. Wyckoff,* 718 F.Supp. 217, 227 (S.D.N.Y.1989). The district judge may "accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations." *Id.*

After careful review of the file, the Magistrate Judge's Report and Recommendation and the plaintiff's objections, this Court ADOPTS the Magistrate Judge's recommendation in full for the reasons stated in the Report.

Defendants' motions for summary judgment are GRANTED (Papers # 14 and # 30). Plaintiffs' motion for summary judgment is DENIED (Paper # 26).

THIS CASE IS CLOSED.

## *MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

(Papers 14, 26, 30 and 63)

NEIDERMEIER, United States Magistrate Judge.

This case arises from a dispute over the plaintiffs' eligibility to participate in two federal loan servicing programs, Homestead Protection and Leaseback/Buyback,

intended to assist farmers who are having financial difficulties.

The case is before the court on defendants' motion for summary judgment, Paper 14; plaintiffs' cross-motion for summary judgment, Paper 26; defendants' motion for summary judgment on the amended complaint, Paper 30; and plaintiffs' motion to amend, Paper 30.

## I. *The Parties*

Plaintiffs Fred Flint and Mary Flint ("the Flints"), husband and wife, reside on the Braintree, Vermont farm (hereinafter "the Property") that is the subject of this dispute.

The defendants are the United States Department of Agriculture; Dan Glickman, Secretary of the Department of Agriculture; Grant Buntrock, Administrator of the Federal Consolidated Farm Service Agency; and James Monahan, Executive Director of the Farm Services Agency for the State of Vermont. The individual defendants are named in their official capacities only For convenience, the Court will refer to the defendants collectively as "the FSA."[1]

## II. *The Federal Programs*

When the FSA acquires property, by foreclosure or otherwise, previously owned by a borrower, it is required by regulation to offer the borrower two types of preservation loan servicing options: "Homestead Protection" and "Leaseback/Buyback."

### 1. *Homestead Protection*

Homestead Protection permits former FSA borrowers whose property FSA has acquired through foreclosure or otherwise to retain their house and up to ten acres of land through a lease and/or purchase arrangement. This allows them to keep their homes and to continue farming. 7

C.F.R. § 1951.911(b)(1) (1996). To qualify for the Homestead Protection program, the applicant must have, *inter alia,* owned the property, must have occupied the property continuously for six years, and must have adequate income to make rental payments and maintain the property. 7 C.F.R. § 1951.911(b)(3) (1996).

### 2. *Leaseback/Buyback*

Leaseback/Buyback ("LB/BB") allows former owners of farm property the first opportunity to lease or purchase the entire property, not merely their house and ten acres. The LB/BB regulation contains a requirement that the applicant "must have acted in good faith as defined in § 1951.906 of this subpart." 7 C.F.R. § 1951.911(a)(4)(i) (1996).

> A borrower is considered to have acted in "good faith" if the borrower has demonstrated "honesty" and "sincerity" in carrying out ... any ... written agreements made with FmHA or its successor agency under Public Law 103–354. Findings of a lack of good faith will be based on violations within the borrower's control.

7 C.F.R. § 1951.906 (1996).

In processing LB/BB requests, FSA must determine whether the applicant is capable of meeting the terms of the lease and whether the applicant can "assure a reasonable prospect of success in the farming operations." 7 C.F.R. § 1951.911(a)(6). Leases under the LB/BB program contain an option to purchase the entire farm for its appraised market value. *Id.* at (a)(6)(ii). The property will not be leased for a token amount. A "market rent" comparable to rents for similar properties in the local area must be charged. *Id.* at (a)(6)(iii). Under this program, the property is not subdivided. *Id.* at (a)(8)(I).

**1.** The entity now known as the Farm Service Agency, or "FSA," was one of two agencies created out of the agency formerly known as the Farmers' Home Administration, or

"FmHA," in October, 1994. For consistency, the Court refers to the agency by its present acronym throughout this opinion.

## III.   *Factual Background*

### 1.   *Foreclosure and Sale*

The Flints purchased the Property from Fred Flint's parents in 1974. The Federal Land Bank held the first mortgage on the Property, and the FSA held a second mortgage. However, the Flints ceased making mortgage payments after December 24, 1984. On September 27, 1990, the FSA purchased the farm at a foreclosure sale conducted by the Federal Land Bank. In April 1995 the FSA conducted a sealed bid sale of the Property. On May 16, 1995, the FSA accepted a bid from Bob and Tay Simpson of $240,000 for the Property and entered into a purchase and sales agreement. Due to the present dispute, FSA has not been able to convey title to the Property to the Simpsons. The Flints continue to live on the Property.

### 2.   *Timber Harvest*

In August, 1991, after the FSA had taken title to the Property, the Flints harvested some timber. While some of the timber was cut from a 3–acre parcel the FSA did not own, it is undisputed that at least some timber was cut from FSA land. The cutting was done without the knowledge or permission of the FSA, and the Flints did not offer to reimburse the FSA for the value of the timber until after the FSA discovered the cutting.

The FSA alleged that the Flints committed waste or conversion by removing 28,-181 board feet of lumber worth $4,932.28 from the Property. The Flints argued that (1) the value of the timber was only $941.60, (2) only a small portion of the timber was taken from FSA-owned property, and (3) the cutting was done to increase the value of their sugarbush and thus constituted good forestry practice.

On January 23, 1992, the Flints sent a letter outlining their position to Patrick Freeman, FSA's Chief of Farmer Programs for Vermont. On January 24, 1992, Freeman notified the Flints by letter that the FSA was forwarding the dispute to the FSA's Office of General Counsel ("OGC") to determine whether the Flints had acted in bad faith by cutting the timber. Freeman did not forward the Flints' January 23 letter to OGC. On March 25, 1992, OGC found bad faith on the part of the Flints.

On July 7, 1992, the Flints sent materials to the FSA including a sketch of the 3–acre parcel, the deed to that parcel, a valuation of the timber cut on the FSA land based on estimates from an Orange County forester, and an offer of $941.60 in settlement of the dispute. Again, the local FSA office did not forward these materials to OGC. The FSA did not accept the offer.

### 3.   *Application for Homestead Protection*

The Flints filed an application for Homestead Protection on May 19, 1992. The FSA denied the application on the ground that the Flints did not meet the requirement of six years' continuous occupation of the property. The Flints appealed, and on December 8, 1992, the National Appeals Staff ("NAS") upheld the denial for lack of continuous residency, failure to submit a complete application, failure to demonstrate sufficient income to make rental payments and maintain the property, and failure to act in good faith.

The Flints appealed this decision, and on April 6, 1993, the NAS director reversed the denial. He based his decision on his new, liberal reading of the personal occupancy rule. The director returned the case to the local office in Randolph, Vermont for further consideration. On July 15, 1993, the State FSA Office in Berlin, Vermont issued a decision reversing the NAS decision on all grounds. The Flints appealed, and on December 17, 1993, the NAS again determined that the Flints were entitled to Homestead Protection.

On January 3, 1994, the Assistant Administrator of Farmer Programs sent a request to the Director of the NAS for a set-aside of the NAS's decision reversing the denial of Homestead Protection. The

NAS director denied that request on January 5. Nevertheless, the national FSA administrator notified the Flints by a letter dated March 4, 1994, that the NAS's interpretation of "occupied" was incorrect, that Homestead Protection was denied, and that the Flints had no further appeal rights. The FSA then proceeded in state court to remove the Flints from the Property.

On August 23, 1995, the Orange County Superior Court issued a Writ of Possession. The parties attempted to settle the dispute, but were unsuccessful. The FSA requested that the Orange County sheriff execute the writ on August 30, but on September 6, the Flints filed a motion for a stay of execution. The motion was granted and a hearing was scheduled, but it has not been held.

The Flints filed this Complaint on March 18, 1996, seeking declaratory and injunctive relief granting them Homestead Protection as well as costs and attorney fees. On April 11, 1996, the Flints filed for bankruptcy pursuant to Chapter 7, which prevented the Vermont Supreme Court from ruling on the merits of the stay of execution motion.

By a letter dated January 30, 1997, the FSA offered the Flints Homestead Protection in accordance with the NAS director's decision of January 5, 1994. On January 31, 1997, the FSA moved for summary judgment, Paper 14, claiming that the offer of Homestead Protection made the lawsuit moot.

4. *Application for Leaseback / Buyback*

On July 13, 1992, the Flints applied for LB/BB loan servicing. On August 18, 1992, the FSA denied the Flints' application on the grounds that (1) the application lacked the required "farm and home plan" or any type of business plan; (2) no 1991 income tax return was supplied; and (3) the Flints had not acted in good faith by illegally cutting the timber. Paper 21, Exhibit 1.

On September 10, 1992, the Flints appealed this denial. An NAS hearing officer upheld the denial on December 8, 1992. On March 1, 1993, the Flints appealed this decision. On April 6, 1993, the NAS Director reversed the denial, finding that the income tax return had arrived on September 9, 1992 and a Farm and Home plan had been provided on May 19, 1992; "considerable confusion" existed as to the logging; and the FSA had never determined a lease amount for the property under either LB/BB or Homestead Protection, so the Flints' ability to repay could not be determined. Paper 21, Exhibit 3.

On July 15, 1993, the FSA again denied the Flints LB/BB servicing on the ground that the Flints had acted in bad faith as evidenced by their taking timber from FSA property. The Flints appealed this denial on September 30, 1993. The NAS conducted a hearing on December 1, 1993. Mr. Flint argued that the cutting of timber improved the Property; that he had not hidden the activity; that he had attempted to settle with the FSA, and that the amount in dispute was *de minimis*. In the December 16, 1993 decision, the hearing officer found that the Flints lacked good faith, and that they had not carried their burden of proving that the information upon which the previous opinion was based was incorrect. The Flints appealed. On May 13, 1994, the NAS director upheld the denial of LB/BB. As noted earlier, FSA sold the Property to the Simpsons in May 1995.

On January 31, 1997, the Flints amended their Complaint, Paper 14, adding a claim that the FSA's denial of LB/BB was arbitrary, capricious, and unsupported by facts, in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 – 706. Papers 14 and 21. The Flints demanded declaratory relief and an injunction invalidating the denial of LB/BB servicing and directing the FSA to determine a lease and purchase amount for the Property.

On March 14, 1997, the Flints filed a cross-motion for summary judgment on the Homestead Protection issue. Paper 26. On March 18, 1997, FSA filed a motion for summary judgment on the amended Complaint which the Flints have opposed. Paper 30. On August 8, 1997, the Flints moved to amend the amended complaint to correct a typographical error. Paper 63.

## DISCUSSION

### Summary Judgment Standard

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is a genuine dispute over a material fact when the evidence requires a factfinder to resolve the parties' differing versions of the truth at trial. *Id.* at 249, 106 S.Ct. 2505 (citing *First National Bank of Arizona v. Cities Service Co., Inc.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "Uncertainty as to the true state of any material fact defeats the motion." *Gibson v. American Broadcasting Cos., Inc.,* 892 F.2d 1128, 1132 (2d Cir.1989). On a motion for summary judgment, if there is a genuine issue of material fact that turns on the credibility of witnesses or on the proper inferences to be drawn from undisputed facts, summary judgment is not proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In analyzing the record, the court must view the evidence in the light most favorable to the nonmoving party and resolve all ambiguities in its favor. *Dister v. Continental Group Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmovant may not rely on conclusory allegations or mere conjecture, but rather must offer specific facts to support a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (construing Fed. R.Civ.P. 56(e)). As to any claim or essential element thereof for which the nonmoving party bears the burden of proof at trial, the nonmoving party must make a showing sufficient to establish the existence of that claim or element. *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548.

### A. Homestead Protection

The FSA's first summary judgment motion, Paper 14, addressed only Homestead Protection because the motion was filed before the Flints amended their Complaint to add the LB/BB claim. The FSA argued that its offer of Homestead Protection, after the filing of the lawsuit, mooted the Flints' claims. The Flints opposed the motion, arguing that a controversy remained because their demand for a declaration that the FSA had acted illegally in originally denying Homestead Protection was still pending. The Flints then cross-moved for summary judgment, claiming that no material facts were in dispute, and that they were entitled to Homestead Protection as a matter of law.

■ It is well settled that "mootness [is] the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), *quoting* Henry Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973). "Even when one party wishes to persist to judgment, an offer to accord all of the relief demanded may moot the case."

Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.2 (2d ed.1987). If the defendant accords all the relief the plaintiff demands, the effect is the same as a settlement and there is no point in adjudicating the merits of the case. *Id.*

■ Where a case contains more than one issue, it "may be moot as to some issues yet 'live' as to others." *Florida Board of Business Regulation v. NLRB*, 605 F.2d 916, 918 (5th Cir.1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 497, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). The court must be "alert to the survival of other issues." *ITT Rayonier v. United States*, 651 F.2d 343, 345 (5th Cir., 1981).

■ In order to determine whether an issue is moot where a demand for declaratory relief remains, the Court must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Florida Board*, 605 F.2d at 918–19 (quoting *Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir.1977)). Accordingly, the question presented is whether, where the requested substantive relief has been granted but a claim for declaratory relief remains, that claim saves the case from mootness.

Declaratory judgments, like injunctions, are a form of equitable relief. A court's decision to grant a declaratory judgment is "discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The effect of the administrative action must also have been "felt in a concrete way by the challenging parties." *Id.*

■ The Flints claim that the FSA acted illegally by overruling the NAS's December 12, 1993 decision to grant them Homestead Protection, and they seek a declaration to that effect now in order to bolster their claim for the recovery of costs and attorney fees in a subsequent action pursuant to the Equal Access to Justice Act, ("EAJA"), 28 U.S.C. § 2412. Paper 27 at 3. The FSA claims that the Flints are not entitled to a declaratory judgment because the dispute as to Homestead Protection is no longer "live," and the Flints do not have "a legally cognizable interest in the final determination" of the issue. *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)).

At the hearing held before the Court on July 22, 1998, the Flints argued that despite the FSA's offer of Homestead Protection, they were seeking a declaratory judgment to that effect to facilitate their likely request for attorney's fees under the EAJA. However, when an issue is clearly moot, a declaratory judgment is not required in order for the court to consider an EAJA request.

The FSA has now provided plaintiffs with the offer of Homestead Protection, the relief sought in their original complaint. The issue of whether the initial denial of Homestead Protection was substantially justified under the EAJA will be determined if the Flints file an EAJA motion. *See, Operating Engineers Local Union No. 3 of The International Union of Operating Engineers, AFL—CIO v. Bohn*, 737 F.2d 860, 863 (10th Cir.1984) (court may find issue moot and later determine EAJA rights).

Therefore, the Court should grant the FSA's motion for summary judgment because the Homestead Protection issue is moot.

## B. Leaseback/Buyback

The FSA moves for summary judgment on the Flints' LB/BB claim for two reasons. First, the FSA argues that because the Flints raised this claim only after the FSA sold the property to innocent third parties, the claim is barred by the doctrine of laches. Secondly, the FSA argues that it properly complied with the APA in denying LB/BB. Because I find no merit in the APA claim, I do not reach the issue of laches.

### 1. APA

The Flints contend that the FSA's denial violated the APA because the FSA failed to consider evidence of the Flints' good faith, evidence which the Flints had provided to the local FSA office.

■ Courts traditionally give the decisions of administrative agencies due deference in reviewing agency action. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In the Second Circuit the appropriate standard of review when reviewing agency actions under the APA provides that, "a court should, as provided by the [APA], uphold the decision unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Sierra Club v. United States Army Corps of Eng.*, 701 F.2d 1011, 1032 (2d Cir.1983) (quoting 5 U.S.C. § 706(2)(A)). In defining arbitrary and capricious, the Second Circuit has stated that

> [A]n agency's decision is held to be arbitrary and capricious when it relies on factors Congress did not want considered, or utterly fails to analyze an important aspect of the problem, or offers an explanation contrary to the evidence before it, or its explanation ... is so implausible that it cannot be ascribed to differing views or agency expertise.

*Sierra Club v. United States Army Corps of Eng.*, 772 F.2d 1043, 1051 (2d Cir.1985). To find a violation of the APA, the Court must find that there is no rational basis for the FSA's decision. If the FSA examined the relevant facts and reached a rational decision based on these facts, the Court must defer to the FSA's determination. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir.1994).

Good faith is defined in 7 C.F.R. § 1951.906, which states, "a borrower is considered to have acted in 'good faith' if the borrower has demonstrated 'honesty' and 'sincerity'" in carrying out his agreements with the FSA. Findings of lack of good faith are based on violations within the borrower's control, which demonstrate the borrower's intent to violate written agreements with the FSA. Allegations of waste or conversion may be used to prove bad faith and deny a servicing request, but they must be substantiated in a written legal opinion by the OGC. *Id.*

■ The OGC determined that the Flints had acted in bad faith by cutting FSA timber. The OGC had information that the value of the timber was approximately $4,900 and that the Flints claimed cutting actually improved value of the property. Even if the OGC did not know that the actual value was less because of the facts alleged by the Flints,[2] the decision was not arbitrary and capricious.

Although the information the Flints offered tends to minimize the extent of the waste or conversion, it is undisputed that they knowingly committed waste or conversion. The applicable regulations do not contain a *de minimis* exception. In other words, the Flints' evidence goes to the quantum of damages, but does nothing to rebut the finding that the Flints committed acts within their control which violated their agreement. They knowingly converted property which belonged to the FSA. Although the decision of the FSA's

---

**2.** In an affidavit submitted after the hearing in this Court, Lynn Ahwesh, the OGC decision-maker, stated that she was aware of this allegation of reduced value when she decided the bad faith issue.

426

Office of General Counsel may not have been informed by the Flint's claim that the FSA-owned timber amounted to less than FSA originally estimated, there was sufficient basis to find the requisite bad faith.

I recommend that the Court grant summary judgment in favor of the FSA on the good faith issue. Accordingly, the Court need not determine whether the Flints satisfy the other LB/BB eligibility factors (i.e., ability to pay, continuity of residence, and completeness of application materials), or whether the doctrine of laches would prevent the Flints from pursuing LB/BB.

## CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT the FSA's motions for summary judgment (Papers 14 and 30) and DENY the plaintiffs' motion for summary judgment (Paper 26).

I GRANT the Flints' motion to amend the amended complaint (Paper 63).

September 9, 1997.